CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
200 Park Avenue – 17th Floor
New York, NY 10166
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

PRISCILLA LAZRI, on behalf of herself and
others similarly situated,

                                   Plaintiff,

     -against-

STUDIO CAHS, LTD., CAHS CONSTRUCTION LTD.,
CATERINA HEIL, and CHARLES STEWART,

                                Defendants.

----------------------------------------------------------------------X

Case No. 22-CV-1158

FLSA COLLECTIVE
ACTION COMPLAINT

Jury Trial Demanded

       Plaintiff, PRISCILLA LAZRI ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants STUDIO CAHS, LTD. ("STUDIO CAHS, LTD."), CAHS CONSTRUCTION CORP. ("CAHS CONSTRUCTION LTD.") (the "Corporate Defendants"), CATERINA HEIL, and CHARLES STEWART (the "Individual Defendants") (the Corporate Defendants and the Individual Defendants are collectively referred to herein as the "Defendants"), and states as follows:

## INTRODUCTION

       1.     Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she is entitled to recover from Defendants:

(a) unpaid minimum/regular rate wages due to unpaid "off-the-clock" work, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law, she is entitled to recover from Defendants: (a) unpaid minimum/regular rate wages due to unpaid "off-the-clock work, (b) unpaid overtime compensation, (c) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiff is a resident of Kings County, New York.

6.      Defendant, STUDIO CAHS, LTD., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 787 Madison Avenue, 3rd Floor, New York, New York 10065.

7.      Defendant, STUDIO CAHS, LTD., was originally incorporated in or about June 2019 as STUDIO CAHS, INC.

8.      In or about October 2020, STUDIO CAHS, INC. was changed to STUDIO CAHS, LTD.

9.      Defendant, STUDIO CAHS, LTD., owns and operates an architecture/interior design business located at 787 Madison Avenue, New York, New York 10065 (the "Madison Avenue Office").

10.     Between in or about July 2020 and October 2021, the principal place of business of STUDIO CAHS, LTD. was 57 East 82nd Street, Suite 1R, New York, New York 10028 (the "82nd Street Office").

11.     Defendant, STUDIO CAHS, LTD., provides design, development, and architectural services to its clients in an all-in-one package from schematic design through development and construction.

12.     Since in or about 2020, the Individual Defendants reside at 13 East 71st Street, New York, New York 10021 (the "E. 71st Street Residence").

13.     The Individual Defendants rent the E. 71st Residence while they renovate and redesign their future residence located at 7 East 81st Street, New York, New York 10028 (the "E. 81st Street Residence").

14.     Between in or about 2016 and 2019, the Individual Defendants resided at 360 East 69th Street, New York, New York 10021 (the "E. 69th Street Residence").

15.     From its inception in June 2019 through in or about June 2020 – before the opening of the 82nd Street Office, all work performed by STUDIO CAHS, LTD. was performed from either the E. 69th Street Residence or the E. 71st Street Residence.

16.     Defendant, CAHS CONSTRUCTION LTD., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 787 Madison Avenue, 3rd Floor, New York, New York 10065.

17.     Defendant, CAHS CONSTRUCTION LTD., is the construction arm of STUDIO CAHS, LTD., and performs the construction, to the extent necessary, for any projects undertaken by STUDIO CAHS, LTD.

18.     Since its inception, STUDIO CAHS, LTD. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.  Indeed, STUDIO CAHS, LTD., reported in excess of $500,000 in expenses alone each year.

19.     Since its inception, CAHS CONSTRUCTION LTD. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.  Indeed, CAHS CONSTRUCTION LTD., reported in excess of $500,000 in expenses alone each year.

20.     The Individual Defendants – who are married, are the officers, shareholders, owners, directors, supervisors, managing agents, and proprietors of each of the Corporate Defendants who actively participate in the day-to-day operation of the

Corporate Defendants and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

21.     The Individual Defendants exercise control over the terms and conditions of their employees' employment, in that they have the power to and do in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

22.     The Corporate Defendants are associated as a single enterprise, utilizing Plaintiff and others similarly situated in a fungible and interchangeable manner in the business operated by Defendants.

23.     The Corporate Defendants each engaged in related activities, namely, providing architectural, design and construction services to the public for profit. The Corporate Defendants shared Plaintiff and others similarly situated, acted in the interest of each other with respect to employees, paid their employees by the same plan or scheme, and were under common control.

24.     The Corporate Defendants are controlled by the same owner or owner group, operating as a unified operation and, upon information and belief, each provided mutually supportive services to the substantial advantage of the other such that each entity was operationally interdependent of each other and, therefore, may be treated as a single enterprise.

25.     29 U.S.C. § 202(a) states "[t]hat Congress further finds that the employment of persons in domestic service in households affects commerce."   As Plaintiff was employed, at least in part, by Defendants as a domestic service employee, Plaintiff's work for Defendants is covered under the FLSA pursuant to 29 U.S.C. § 206(f).

26.     29 C.F.R. 552.99 states "Congress in section 2(a) of the Act specifically found that the employment of persons in domestic service in households affects commerce.   In the legislative history it was pointed out that employees in domestic service employment handle goods such as soaps, mops, detergents, and vacuum cleaners that have moved in or were produced for interstate commerce and also that they free members of the household to themselves engage in activities in interstate commerce.   (S. Rep. 93-690, pp. 21-22).   The Senate Committee on Labor and Public Welfare "took note of the expanded use of the interstate commerce clause by the Supreme Court in numerous recent cases (particularly *Katzenbach v. McClung*, 379 U.S. 294 (1964))," and concluded "that coverage of domestic employees is a vital step in the direction of ensuring that all workers affecting interstate commerce are protected by the Fair Labor Standards Act." (S. Rep. 93-690, pp. 21-22).

27.     Plaintiff's work for Defendants affected interstate commerce for the relevant time period because the materials and goods that Plaintiff handled and/or used on a constant and/or continual basis and/or that were supplied to Plaintiff by Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same.   Plaintiff's work for Defendants was actually in and/or so

closely related to the movement of commerce while she worked for Defendants that the FLSA applies to Plaintiff's work for Defendants.

28.     In or about November 2016, Defendants hired Plaintiff to work as a domestic service employee, babysitter/caretaker, and personal assistant to the Individual Defendants.

29.     In or about August 2020, Plaintiff began taking on the additional responsibilities of working as an administrative assistant for the Corporate Defendants.

30.     Plaintiff worked for Defendants until in or about November 2021.

31.     Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned minimum/regular rate wages due to unpaid "off-the-clock" work, in direct contravention of the FLSA and New York Labor Law.

32.     Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

33.     Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

34.     In or about November 2016, Defendants hired Plaintiff to work as a domestic service employee, babysitter/caretaker, and personal assistant to the Individual Defendants.

35.     Neither at the time of hire, nor at any time thereafter did Defendants provide Plaintiff with a written wage notice identifying Plaintiff's regular hourly rate of pay and corresponding overtime rate of pay.

36.     In or about August 2020, Plaintiff began taking on the additional responsibilities of working as an administrative assistant for the Corporate Defendants.

37.     Plaintiff's employment for Defendants came to a final conclusion in or about November 2021.

**Plaintiff's Employment Between November 2016 and December 2017**

38.     Between in or about November 2016 and August 2019, the Individual Defendants resided at the E. 69th Street Residence.

39.     From in or about November 2016 through in or about December 2017, Plaintiff was employed by the Individual Defendants as a domestic service employee, babysitter/caretaker, and personal assistant at the E. 69th Street Residence.   More specifically, Plaintiff performed – among other things, work as a babysitter and caretaker for the Individual Defendants' three (3) children; routinely cooked dinner for the Individual Defendants and their family; cleaned the E. 69th Street Residence – including, among other things, sweeping and vacuuming, doing laundry, and washing dishes; prepared breakfast for the children; picked up the children from school; responded to emails on behalf of the Individual Defendants for their personal and social events; went food shopping; booked and made travel arrangements for the Individual Defendants; scheduled tutoring classes for the children; took children to extracurricular events; scheduled doctor appointments for the family; acted as the liaison between the Individual Defendants and their other household employees regarding work assignments, hours, and pay; paid and mailed credit card, utility bills and other items.

40.     During 2016, the Individual Defendants were in the process of redesigning the E. 69th Street Residence.

41.     During that time, Plaintiff was also involved with assisting the Individual Defendants in connection with that renovation project, including, among other things, communicating with vendors and contractors, ordering merchandise, scheduling contractors, and paying contractor and vendor invoices.

42.     Beginning in or about March 2017, Defendant CATERINA HEIL took on a freelance interior design project for premises located at 432 Park Avenue, New York, New York 10022 (the "Park Avenue Project").

43.     Plaintiff was directly involved with assisting Ms. Heil with the Park Avenue Project throughout 2017, including, but not limited to, communicating with the clients; communicating with vendors and contractors, including some of whom were located in Portugal; scheduling appointments with the clients, vendors and contractors; purchasing goods from vendors; paying vendor and contractor invoices; receiving merchandise deliveries on-site; on-site supervision of contractors; and meeting on-site with clients, vendors and contractors, etc.

44.     Between in or about November 2016 and December 2017, Plaintiff worked over forty (40) hours per week.

45.     During this period, Plaintiff worked five (5) days per week and, although her work schedule fluctuated based on the particular needs of the Individual Defendants, Plaintiff's work schedule consisted of twelve (12) to fourteen (14) hours per day Monday through Friday from 7:00 a.m. until 7:00 p.m. to 9:00 p.m., and occasionally even later.

46.     During this period, Plaintiff worked an additional five (5) hours at night after leaving the residence of the Individual Defendants and/or on weekends from Plaintiff's own home responding to the needs and requests of the Individual Defendants.

47.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid, in cash, at the rate of $25 per hour straight time for all hours worked while at the E. 69th Street Residence – *i.e.*, sixty (60) to seventy (70) hours per week.[1]  Work performed above forty (40) hours per week while at the E. 69th Street Residence was not paid at the statutory rate of time and one-half as required by state and federal law.

48.     In addition, Defendants entirely failed to pay Plaintiff any wages for the five (5) hours of work performed each week from Plaintiff's home.

49.     Plaintiff stopped working for the Individual Defendants in or about early January 2018 but was re-hired by the Individual Defendants in or about June 2018.

**Plaintiff's Employment Between June 2018 and August 2019**

50.     In or about June 2018, the Individual Defendants re-hired Plaintiff to work as a domestic service employee, babysitter/caretaker, and personal assistant at the E. 69th Street Residence.

51.     Plaintiff's job duties and responsibilities remained the same as they were previously, including assisting Ms. Heil with interior design projects.

52.     Plaintiff continued to work for the Individual Defendants in those capacities until Plaintiff was terminated on or about August 28, 2019.

53.     During 2019, Plaintiff was also involved with assisting Ms. Heil coordinate the photography of several previously completed design projects in anticipation of Ms. Heil's launch of STUDIO CAHS, LTD.  As part of this project, Plaintiff was responsible for communicating with and scheduling photography sessions with the homeowners and photographers.

---

[1] Plaintiff was initially paid $23 per hour for approximately the first week or two of her employment.

54.     In addition, Plaintiff directly assisted Ms. Heil with a redesign/renovation project on College Place in Manhattan, including, but not limited to communicating with the clients; communicating with vendors and contractors, including some of whom were located in Italy; scheduling appointments with the clients, vendors and contractors; purchasing goods from vendors; paying vendors and contractors; receiving merchandise deliveries on-site; and meeting on-site with clients, vendors and contractors, etc.

55.     During this period, Plaintiff worked five (5) days per week and, although her work schedule fluctuated based on the particular needs of the Individual Defendants, Plaintiff's work schedule consisted of ten (10) to twelve (12) hours per day Monday through Friday from 9:00 a.m. until 7:00 p.m. to 9:00 p.m., and occasionally even later.

56.     During this period, Plaintiff worked an additional five (5) hours at night after leaving the residence of the Individual Defendants and/or on the weekends from Plaintiff's own home responding to the needs and requests of the Individual Defendants.

57.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid, in cash, at the rate of $35 per hour straight time for all hours worked while at the E. 69th Street Residence – i.e., fifty (50) to seventy (60) hours per week.  Work performed above forty (40) hours per week while at the E. 69th Street Residence was not paid at the statutory rate of time and one-half as required by state and federal law.

58.     In addition, Defendants entirely failed to pay Plaintiff any wages for the five (5) hours of work performed each week from Plaintiff's home.

59.     Plaintiff stopped working for the Individual Defendants on or about August 28, 2019, but was re-hired by Defendants on or about August 24, 2020.

**Plaintiff's Employment Between August 2020 and December 2020**

60.     On or about August 24, 2020, Defendants re-hired Plaintiff to work as a personal assistant to Ms. Heil.

61.     In addition, Plaintiff began working – off the books, as an administrative assistant for STUDIO CAHS, LTD., including assisting Ms. Heil in connection with various design and build projects.   Plaintiff's work for STUDIO CAHS, LTD. was performed from the E. 71st Street Residence.

62.     At this time, Plaintiff also assisted Ms. Heil directly with the redesign/renovation work that Ms. Heil was/is performing at the E. 81st Street Residence, including, but not limited to, communicating with vendors and contractors; scheduling appointments; purchasing goods from vendors; paying vendors and contractors; receiving merchandise deliveries on-site; and meeting on-site with vendors and contractors, etc.

63.     During this period, Plaintiff worked five (5) days per week and, although her work schedule fluctuated based on the particular needs of the Individual Defendants, Plaintiff's work schedule consisted of eight (8) to nine (9) hours per day Monday through Friday from 9:00 a.m. until 5:00 p.m. to 6:00 p.m., and occasionally even later.

64.     During this period, Plaintiff worked an additional five (5) hours at night after leaving the residence of the Individual Defendants and/or on the weekends from Plaintiff's own home responding to the needs and requests of the Individual Defendants.

65.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $35 per hour straight time for all hours worked while at the E. 71st Street Residence – *i.e.*, forty-five (45) hours per week.  Work

performed above forty (40) hours per week while at the E. 71st Street Residence was not paid at the statutory rate of time and one-half as required by state and federal law.

66.     In addition, Defendants entirely failed to pay Plaintiff any wages for the five (5) hours of work performed each week from Plaintiff's home.

**Plaintiff's Employment Between January 2021 and February 2021**

67.     Plaintiff took a leave of absence between January 2021 and February 2021 to give birth to her child.

68.     During this period, Plaintiff would occasionally perform work for Defendants from her home.

69.     During this period, Plaintiff performed a total of fifty (50) hours of work for Defendants from her home, including, among other things, making and receiving phone calls, scheduling appointments, paying invoices, etc.

70.     During this period, Defendants failed to pay Plaintiff any wages for work performed.

**Plaintiff's Employment Between March 2021 and November 2021**

71.     On or about March 2, 2021, Plaintiff returned from her leave of absence.

72.     Plaintiff's job duties and responsibilities remained largely the same as they were immediately prior to taking her leave of absence, including continuing to assist Ms. Heil directly with the redesign/renovation of the E. 81st Street Residence.

73.     However, Plaintiff undertook the additional responsibilities of performing bookkeeping and payroll duties for STUDIO CAHS, LTD. and CAHS CONSTRUCTION LTD.

74.     In or around this time, Plaintiff was put "on the books" as a formal employee of STUDIO CAHS, LTD.

75.     During this period, Plaintiff worked five (5) days per week and, although her work schedule fluctuated based on the particular needs of the Defendants, Plaintiff's work schedule consisted of eight (8) hours per day Monday through Friday from 9:00 a.m. until 5:00 p.m.

76.     During this period, Plaintiff worked an additional five (5) hours at night and/or on the weekends from Plaintiff's own home responding to the needs and requests of the Individual Defendants.

77.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $43.75 per hour and worked approximately forty-five (45) hours per week.

78.     Defendants entirely failed to pay Plaintiff any wages for the five (5) hours of overtime work performed each week from Plaintiff's home.

79.     Plaintiff's employment came to a final conclusion in or about November 2021.

80.     Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated employees statutory minimum/regular rate wages for unpaid "off-the-clock" work in direct violation of either the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

81.     Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and

New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

82.     At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiff brings this action individually and as class representative on behalf of herself and all other current and former non-exempt employees who have been or were employed by Defendants between February 10, 2019 through the date that the opt-in period expires as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage rate and/or the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

84.     The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

85.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

86.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

87.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

88.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.      Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

16

b.  Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c.  What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.  Whether Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.  Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f.  Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

89.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

90.  Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

91.     Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

92.     At all relevant times, upon information and belief, the Corporate Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).   Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

93.     At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

94.     Since its inception, STUDIO CAHS LTD. has had gross revenues in excess of $500,000.

95.     Since its inception, CAHS CONSTRUCTION LTD. has had gross revenues in excess of $500,000.

96.     Since their inception, the Corporate Defendants jointly have had gross revenues in excess of $500,000.

97.     Plaintiff and the Collective Action Members worked hours for which they were not paid the statutory minimum wage.

98.     Defendants engaged in a policy and practice of refusing to pay Plaintiff and Collective Action Members for all hours worked by requiring them to work "off-the-clock" without receiving any wages and, thus, not paying Plaintiff and the Collective

Action Members the statutory minimum wage for all hours worked let alone their regular hourly rate of pay for such work hours.

99.    Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Collective Action Members for hours worked.

100.    Defendants failed to pay Plaintiff and the Collective Action Members minimum wages in the lawful amount for hours worked.

101.    Plaintiff and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

102.    Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

103.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

104.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or

should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiff and the Collective Action Members.

105.   As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

106.   Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

107.   As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

108.   Due to Defendants' reckless, willful and unlawful acts, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum/regular rate wages and unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

109.   Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

110.   Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "109" of this Complaint as if fully set forth herein.

111.    Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

112.    Defendants engaged in a policy and practice of refusing to pay Plaintiff for all hours worked by requiring Plaintiff to work "off-the-clock" without receiving any wages and, thus, not paying Plaintiff the statutory minimum wage for all hours worked let alone her regular hourly rate of pay for such work hours.

113.    Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff minimum wages in the lawful amount for all hours worked.

114.    Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

115.    Defendants failed to properly disclose or apprise Plaintiff of her rights under the New York Labor Law.

116.    Defendants failed to furnish Plaintiff with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 142-2.7.

117.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

118.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net

wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 142-2.6.

119.    Neither at the time of hiring, nor at any time thereafter, did Defendants notify Plaintiff in writing of her hourly rate of pay, corresponding overtime rate of pay, and her regularly designated payday, in contravention of New York Labor Law § 195(1).

120.    Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid minimum/regular rate wages, unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

121.    Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiff PRISCILLA LAZRI, on behalf of herself and other similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

(a)    An award of unpaid minimum/regular rate wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

(d)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(e)     An award of statutory damages for Defendants' failure to provide wage notices and wage statements pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)     An award of prejudgment and post-judgment interest;

(g)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(h)     Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
        February 10, 2022

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
200 Park Avenue – 17th Floor
New York, NY 10166
T. (212) 209-3933
F. (212) 209-7102

By: _____
        Giustino (Justin) Cilenti (GC2321)

23

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Priscilla Lazri, am an individual currently or formerly employed by Studio

Cahs, Inc. and/or related entities.  I consent to be a plaintiff in the above-captioned action

to collect unpaid wages.

Dated: New York, New York
      December 9, 2021

Priscilla Lazri